CHOCTAW, O. & G. R. CO. v. JACKSON et al.

(Circuit Court, E. D. Oklahoma. September 6, 1910.)

No. 253.

1. DEATH (§ 31*)—ACTIONS FOR CAUSING DEATH—PERSONS ENTITLED TO SUE.
   Since the action for negligence causing death is wholly statutory, and Carter's Ind. T. St. (Ind. T. Ann. St. 1899, §§ 3430, 3431), giving the right of action, expressly specifies as the parties who may bring the action the personal representative of the deceased person, and, if there be no personal representative, then the heirs at law of the deceased person, those parties only may maintain the action.

   [Ed. Note.—For other cases, see Death, Cent. Dig. §§ 35–36; Dec. Dig. § 31.*].

2. DEATH (§ 50*)—ACTIONS FOR CAUSING DEATH—PLEADING—MATTERS TO BE PROVED.
   In an action by the widow and heirs of a decedent for causing his death, plaintiff must not only plead, but must also prove, that there has been no administration.

   [Ed. Note.—For other cases, see Death, Cent. Dig. § 67; Dec. Dig. § 50.*]

3. APPEAL AND ERROR (§ 499*)—RECORD—PRESENTATION OF GROUNDS OF REVIEW.
   A record showing that defendants requested a directed verdict, and the motion for new trial alleging its refusal as error, and the statement of the case in defendant's brief on writ of error, reciting that the case presents three phases, namely, negligence of a workman, negligence of the servants of defendant railroad company and the contributory negligence of the decedent show that the failure of proof of nonadministration of the decedent's estate, so as to give the heirs the right to sue, was not called to the attention of the court.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2299; Dec. Dig. § 499.*]

4. APPEAL AND ERROR (§ 1170*)—REVIEW—HARMLESS ERROR.
   Whether Mansf. Dig. Ark. § 5083 (Ind. T. Ann. St. 1899, § 3288), in force in Indian Territory when the case at bar was tried and appealed to the Court of Appeals, of which the federal Circuit Court is the successor, providing that the court must disregard any error which does not affect the substantial rights of the adverse party, is binding on the federal Circuit Court or not, it embodies a sound principle of law.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4540–4545; Dec. Dig. § 1170.*]

5. PARTIES (§ 76*)—CAPACITY TO SUE—WAIVER OF OBJECTIONS.
   In an action for causing death tried more than three years after the death, the failure of plaintiff to prove that there had been no administra-

tion, after pleading such want of administration and a denial thereof by defendant, is waived where it is not brought to the attention of the court.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 117–121; Dec. Dig. § 76.*]

6. DEATH (§ 75*)—ACTIONS FOR CAUSING DEATH—EVIDENCE.

In an action by a widow and heirs for causing death, testimony of the widow that she was married to the decedent, and that they had three children, who were the other plaintiffs associated with her in the case, was sufficient to warrant the jury in finding that she was the decedent's lawful wife, and that the other plaintiffs were his only children.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 93, 95; Dec. Dig. § 75.*]

Appeal from the United States Court for the Central District of the Indian Territory.

Action by Annie Jackson and others against the Choctaw, Oklahoma & Gulf Railroad Company. From a judgment in favor of plaintiffs, defendant appeals. Affirmed.

C. B. Stuart, C. O. Blake, H. B. Low, and R. J. Roberts, for appellant.

Wolfe, Hare & Maxey, for appellees.

CAMPBELL, District Judge. On January 2, 1902, James C. Jackson, a freight conductor in the employ of the Missouri, Kansas & Texas Railway Company, was killed by a collision between a Missouri, Kansas & Texas train and a Choctaw, Oklahoma & Gulf train, at the crossing of these two roads at McAlester, Ind. T. This action was originally instituted in the United States Court for the Central District of Indian Territory by Annie Jackson, his widow, and Nora, Clara, and Willie Jackson, his three minor children, against the aforementioned railroad companies to recover damages for his death. During the trial, and at the close of the plaintiffs' case in chief, the plaintiffs dismissed as to the defendant Missouri, Kansas & Texas Railway Company, and also, by leave of court, amended their complaint by striking out the allegation as to the incompetency of R. L. McHaney, and also as to the negligence in not furnishing him with proper lights. The complaint alleges:

"That on or about the 2d day of January, 1902, the said James C. Jackson approached said station at South McAlester with a train from the south, bound for the station of Muscogee; that it was necessary, according to his orders and instructions, that certain cars in his said train should be set out or left at South McAlester. That he ordered and directed to place said cars upon a side track lying along the west side of the railway track of said Missouri, Kansas & Texas Railway Company, and immediately south of the point where the said tracks of said defendant crossed. That, after receiving the proper signal from said watchman, the said James C. Jackson, with the view of carrying out his said instructions in reference to setting out said cars, caused his said train to be cut, and the north end thereof, to which said cars were then attached, to be moved north over said crossing for the purpose of permitting the switch at the north end of said side track to be opened, so that on the proper signal the engineer operating the engine drawing his train should back said cars over said crossing into and over said switch and onto said side track aforesaid, and that, just after his said train had cleared said crossing, some employé of the Missouri, Kansas & Texas Railway Company did signal his engineer to back up for the purpose aforesaid, and, while his train was in

backward motion, it came into collision with another train of the defendant, the Choctaw, Oklahoma & Gulf Railroad Company, which was then and there being moved over said crossing from the west toward the east. That the said James C. Jackson was standing upon the depot platform near the southwest corner of the depot building, said platform and building being situated north of the track of the Choctaw, Oklahoma & Gulf Railroad Company, and east of the track of the Missouri, Kansas & Texas Railway Company. That, when the south end of said James C. Jackson's train came into contact with the moving cars of the Choctaw, Oklahoma & Gulf Railway Company, the same were caught and suddenly thrown from the track in an easterly direction around and against the southwest corner and south side of said building, catching the same James C. Jackson and throwing him between the edge of one of said cars and a window sill of one of the windows in said depot building, thereby crushing, breaking and cutting his legs at, about, and above the knee, and otherwise injuring him so that shortly thereafter he died. Plaintiffs show to the court that neither James C. Jackson, nor any other person engaged with him in operating said train of the Missouri, Kansas & Texas Railway Company, was guilty of any negligence or of any act proximately contributing to or causing the death of the said James C. Jackson; that the train of the said James C. Jackson was then and there entitled to the use of said crossing, and the employés of the Choctaw, Oklahoma & Gulf Railroad Company were not entitled to the same, and were guilty of negligence in running their said train over said crossing at said time and under the circumstances; that, when the train of the said James C. Jackson passed over said crossing from the south to the north, it stopped with the rear end thereof within 30 feet of said crossing, and that, according to the rules, regulations, customs, and usages which were in force and had been in force for a long while, the employés operating the train, engines and cars of said Choctaw, Oklahoma & Gulf Railroad Company had no right to proceed or attempt to make said crossing, and in attempting to pass over the same as they did under the circumstances they violated such rules, regulations, customs and usages and were guilty of negligence. * * * Plaintiffs further show to the court that the employés of said defendant Choctaw, Oklahoma & Gulf Railroad Company engaged in operating the engine and cars with which the train of the said James C. Jackson collided were guilty of negligence in this: That they saw and were in position to see the rear end of the train of said James C. Jackson, knew where the same had been stopped, saw the switch, and were in a position to see the switch which had been thrown to permit said cars to be placed upon said side track, and from the position of the rear end of said Jackson's train, and from the fact that said switch had been opened, said employés in operating said other train were guilty of negligence in rushing their train over said crossing when they knew, or by the exercise of ordinary care should have known that said Jackson and those engaged with him in operating said train were not through with said crossing and would attempt to back said train over the same as they actually did; that, if they did not see and know all these things, they were guilty of negligence therein. They were further guilty of negligence in failing to keep a lookout, and in failing to observe and obey the signals of the watchman at said crossing."

The defendant, Choctaw, Oklahoma & Gulf Railway Company, answered, denying specifically the acts of negligence charged, and alleging that the death of the deceased was caused by his own negligence. In appellant's original brief, filed July 12, 1906, counsel says that the cause which was originally at issue between the plaintiffs and the Choctaw Company presented three phases: First, the negligence of McHaney, the gateman; second, the negligence of the servants of the Choctaw Company; and, third, the contributory negligence of the deceased, coupled with the negligence of his co-employés. The negligence of McHaney was eliminated from consideration as a ground of recovery by the dismissal above referred to, leaving the question as to

whether the Choctaw Company's servants were negligent, as charged, in running their train over the crossing, and, if so, whether such negligence was the proximate cause of the injury, and the further question as to whether the deceased was also guilty of negligence contributing to his death.

After a very careful perusal and study of the voluminous record, I am persuaded that the trial court did not err in overruling defendant's motion for a directed verdict, so far as the question of the negligence and the deceased's contributory negligence is concerned. While the testimony is conflicting, as I view the record, there is sufficient to take the case to the jury on plaintiffs' theory that the crossing had never been surrendered by Jackson; that the fact that his train pulled up over the crossing was only incidental to his main purpose, that of setting his train in on the passing track, which connected with the main line immediately south of the crossing. There was testimony from which the jury might have found that, even though the rear of Jackson's train passed off the crossing and some feet to the north of it, still, under all the existing rules and custom, he had not intended to and had not in fact surrendered the crossing, and that considering all the facts and circumstances known to the servants of the defendant operating its train, or which they might have known in the exercise of reasonable care, they were negligent in going upon the crossing and causing the collision. Nor was there such evidence of Jackson's contributory negligence as would have warranted the court in taking that question from the jury. This disposes of the first, second, third, and fourth assignments of error, so far as they relate to the defendant's negligence and deceased's contributory negligence. I find no error in the court's charge on the measure of damages, as to which the fifth assignment of error relates. The requested charges upon which the sixth and seventh assignments are based are sufficiently covered by the general charge, so far as they are pertinent or proper. Nor do I find any merit in the remaining assignments.

By appellant's supplementary brief, however, filed by leave of court on August 24, 1909, some three years after its original brief, two questions are raised which, notwithstanding the conclusions above stated, require serious consideration.

By act of Congress certain statutes of the state of Arkansas were extended over Indian Territory, among them, as shown by Carter's Indian Territory Statutes, are the following:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount, in law, to a felony."

"Every such action shall be brought by, and in the name of, the personal representative of such deceased person, and if there be no personal representatives, then the same may be brought by the heirs at law of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by

law in relation to the distribution of personal property left by persons dying intestate, and in every such action, the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person, provided that every such action shall be commenced within two years after the death of such person." Ind. T. Ann. St. 1899, §§ 3430, 3431.

In an amended complaint it is alleged that:

"The plaintiff Annie Jackson was the lawful wife of the said James C. Jackson, and the other plaintiffs are his children; that there was no administration of the estate of the said Jackson."

In the defendant's answer it denies that the plaintiff Annie Jackson was the lawful wife of the said James C. Jackson, and that the other plaintiffs are his children, and denies that there was no administration of the estate of the said Jackson. No proof was offered by the plaintiffs at the trial tending to show that there had been no administration upon the estate of the deceased. At common law these plaintiffs would have no right of action against the defendant on account of the death of the said Jackson, and whatever right, if any, they have to maintain this action, is given by the statute above quoted, and where, as in this case, such a statute expressly specifies the parties who may bring the action, those parties, and those parties only, may maintain it. Railroad Co. v. Needham, 52 Fed. 371, 3 C. C. A. 129. So far as the pleadings are concerned, the amended complaint alleges that there was no administration upon deceased's estate, in which case the action could be maintained by his heirs at law, and, assuming for the purpose of this phase of the case that it sufficiently appears in the pleadings that plaintiffs are the heirs at law, then their capacity to sue appears from the pleadings. That there was no administration is denied by defendant's answer. This raised the issue of fact upon which rested plaintiffs' capacity to sue. It first devolved upon plaintiffs, to establish it by proof, but no proof was offered by the plaintiffs on this point. It was vital to their right to maintain the suit that it appear both from the pleadings and the proof that there had been no administration; and, had the defendant raised the point of this failure of proof in the trial court and the consequent failure of plaintiffs to show affirmatively their capacity to sue, it would have been the duty of the trial court to direct a verdict for the defendant. Davis v. St. L., I. M. & S. Ry. Co., 53 Ark. 117, 13 S. W. 801, 7 L. R. A. 283; Texarkana Gas & Electric Light Co. v. Orr, 59 Ark. 215, 27 S. W. 66, 43 Am. St. Rep. 30; Vaughn v. K. C. N. W. R. Co., 65 Kan. 685, 70 Pac. 602. It is now contended by defendant, plaintiff in error, that the point was raised by the request of defendant's counsel at the trial for a directed verdict. By reference to the record, it appears that at the close of the testimony defendant's counsel requested the court to instruct the jury as follows: "You are instructed to find a verdict for the defendant in this case"—which instruction the court refused to give, and to this refusal the defendant excepted. It does not appear from the record whether there was any argument upon the motion, nor does the record disclose what reasons, if any, were urged by defendant's counsel in support of the motion for a directed verdict. In defendant's motion for a new trial, the fail-

ure to direct a verdict, as requested, is charged as error, and it is also one of defendant's assignments of error. However, as already noted, in the statement of the case in defendant's original brief, as plaintiff in error in the appellate court, prepared and filed by the same counsel who represented defendant in the trial court, it is said:

"The case which was originally at issue between the plaintiffs and the Choctow, Oklahoma & Gulf Railroad Company, was one which presented three phases: (1) Negligence of McHaney; (2) the negligence of the servants of the Choctaw, Oklahoma & Gulf Railroad Company; (3) the contributory negligence of Jackson, the deceased, coupled with the negligence of his co-employés. The case therefore must be determined with reference to the three issues just named."

From this statement of counsel, I am persuaded that his motion for a directed verdict, if urged in the lower court by argument, was based upon one or more of the three phases set forth in his foregoing statement of the case, and that the failure of proof as to nonadministration was not called to the attention of the court. The question, then, arises whether by failing to raise the question directly in the trial court defendant waived it, and cannot now urge it for the first time here. In other words, the question is whether by failing to raise the question at the trial the failure of plaintiffs to establish their capacity to sue was waived by the defendant, so that now it cannot avail itself of that fact here. It is a well-known principle of appellate practice that reviewing courts will not usually consider alleged errors where it fails to appear that they were brought to the attention of the trial court by proper objections and exceptions. By section 5083 of Mansfield's Digest of the Laws of Arkansas (Ind. T. Ann. St. 1899, § 3288), in force in the Indian Territory when this case was tried and appealed to the Court of Appeals, of which this court is the successor, it was provided that:

"The court must in every stage of an action disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

Whether this statute may be said to be binding upon this court or not, it embodies a sound principle of law for the guidance of reviewing courts. In this case the heirs at law of deceased are proper parties if in fact there was no administration. As to whether there was such administration the proof is silent. If there was such administration at the time this action was commenced, and at any time within two years from the death of the deceased he had commenced a similar action against the defendant for the wrongful killing of the deceased, he could no doubt have proceeded with such action, notwithstanding this suit, for in such case the sole capacity to sue is in the administrator or executor, as the case may be. Deceased was killed in January, 1902. This case was tried in November, 1905, more than three years afterwards. If, in fact, there was an administrator or executor and he filed a similar action against the defendant within the statutory period of two years, it was either pending or concluded at the time of this trial. No intimation or evidence of any such other action pending appears in the record. Certainly if such action had

been pending at the time of the trial of this case, defendant would have made it appear to the court, in which event, for that reason alone, if for no other, the trial court undoubtedly would not have permitted a judgment to go against the defendant in this case for the benefit of the widow and next of kin, for the plaintiffs' incapacity to sue would have been apparent. Any action commenced subsequent to the trial of this case would have been beyond the statutory period, and, for that reason, not maintainable. Whether the action be by the personal representative or the heirs at law the recovery, in either case, goes to the widow and next of kin, and if there is no merit in the other contentions of plaintiffs in error, and, aside from the question of capacity to sue, the evidence supports the recovery, then, as it does not appear that there has ever been any action commenced by a personal representative, there is no danger of a double recovery by the beneficiaries. If the trial court committed error in permitting the judgment in the absence of proof of nonadministration under the circumstances of this case, it does not appear that it has affected the substantial rights of the plaintiffs in error.

In City of Atchison v. Twine, 9 Kan. 350, the court said:

"The remedy, when death ensues, from the wrong done, is by an action in the name of the personal representative of the deceased; and the amount recovered will be for the benefit of the widow and children, if any, or next of kin. This action was therefore improperly brought by the widow; and the plaintiff not having the legal right to bring the action, and that fact appearing upon the face of the petition, it was a suitable case for the interposition of a demurrer. Second clause of section 89 of the Code. No objection having been taken by demurrer or answer, the defect was waived."

If such defect in the pleadings may be waived, certainly it might be waived in the proof, where it appears that, notwithstanding the absence of proof, the case is apparently tried on the theory that capacity to sue exists and the failure of proof is not brought to the attention of the court. In the supplementary brief filed by plaintiff in error, it is further contended that the motion for a directed verdict should have been sustained because the plaintiffs failed to allege and prove that they were the heirs at law of the deceased. As we have seen, the amended complaint reads:

"Annie Jackson, Nora Jackson, Clara Jackson, and Willie Jackson, the last three of whom are minors and sue herein by their said mother, Annie Jackson, as their next friend, plaintiffs, complain of the Missouri, Kansas & Texas Railway Company, etc., * * * that the plaintiff Annie Jackson was the lawful wife of the said James C. Jackson, and the other plaintiffs are his children; that there was no administration on the estate of the said Jackson."

Under the practice in Indian Territory at the time permitting such pleadings, the defendant filed its demurrer and answer to this amended complaint together. Demurring, it says:

"Comes now the defendant, Choctaw, Oklahoma & Gulf Railroad Company, and demurs to the amended complaint of the plaintiff herein, for the reason that same does not state facts sufficient to constitute a cause of action against this defendant, of this prays the judgment of the court."

In the answer it denies that the plaintiff Annie Jackson was the lawful wife of the said James C. Jackson, and that the other plaintiffs were his children, and denies that there was no administration

on the estate of the said Jackson. It does not appear that defendant's demurrer was ever passed upon by the court. At any rate, no exception to the ruling of the court thereon is relied upon. The plaintiff Annie Jackson testified that she was married to the deceased, that they had three children, being the three other plaintiffs associated with her in the case. While this testimony does not negative the possibility of deceased having had other children by some former marriage and hence heirs other than the plaintiffs, I think it sufficient to warrant the jury in finding that Annie Jackson was deceased's lawful wife, and the other plaintiffs his only children. If so, then under the laws in force in Indian Territory at the time of the death and at. the time of the trial the plaintiffs were his only heirs. In Kansas City Southern Ry. Co. v. Henric, 87 Ark. 443, 112 S. W. 967, it is said (per syllabus):

"Plaintiff's testimony that she married decedent at a specific time and place, that they had three children only, naming them and giving their ages, that there is no administration pending on his estate—sufficiently negatives the existence of other heirs at law, or any executor or administrator on deceased's estate, within Kirby's Dig. § 6020, requiring actions for negligent death to be brought by deceased's personal representative, or, where there is none, by his heirs at law."

The judgment of the trial court will be affirmed.