YOUNG ELECTRIC SIGN COMPANY, a corporation, Plaintiff and Respondent,

v.

Basil VETAS dba Sir Basil's, Defendant and Appellant.

No. 14653.

Supreme Court of Utah.

May 10, 1977.

Richard W. Campbell, of Olmstead, Stine & Campbell, Ogden, for defendant and appellant.

J. Thomas Bowen, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Plaintiff, Young Electric Sign Company sued for balance due on lease of signs it had custom made for defendant's Sir Basil's drive-in at 999 Washington Boulevard in Ogden. Defendant denied breach of his agreement, or default in making payments. Upon trial to the court, it found the issues in favor of the plaintiff and awarded plaintiff a judgment of $1,612.54. Defendant appeals.

Defendant contends that the trial court erred (1) in finding him in default under the

contract and (2) in refusing to find a provision for liquidated damages to be a penalty and therefore unenforceable.

A lease agreement was entered into by the parties on March 7, 1961. It required the plaintiff to construct and install the sign. Defendant agreed to make monthly payments of $110 for a period of 96 months; and to deposit $660, which the plaintiff was to hold as security for the defendant's performance of the contract. It also contained a provision that if the defendant should default he would pay 75 per cent of the remaining balance due on the contract as liquidated damages.

In 1963, defendant wanted to install additional signs on his premises, so plaintiff built them and the parties executed a similar second rental contract under which defendant was to make monthly payments of $135 for 96 months. In November, 1967, defendant's business was not doing well and he was about $550 behind in his payments. Upon negotiation with the plaintiff the latter agreed to an extension of the contract, reducing the payments from $135 to $99.17 per month payments for a period of 96 months, beginning December 1, 1967. Thereafter defendant made rental payments at the new rate. But in the following months he again became substantially delinquent. By December 1, 1973, he owed $691.19 in back payments. In response to a letter demanding payment of that arrearage, defendant made a payment of $103.63, on December 26, 1973, reducing the amount owed plaintiff to $587.56. This was the last payment made by defendant, and on February 1, 1974, plaintiff brought this suit.

On June 11, 1974, plaintiff attempted to repossess these signs but defendant refused to allow it to do so. Defendant remained in business until October 15, 1974. Plaintiff was unable to negotiate a new lease on these signs with the subsequent tenants. The undisputed testimony was that inasmuch as these signs had been fashioned specifically for that business they became of very little value.

Defendant asserted two lines of defense: that it was the plaintiff who breached the agreement in that it failed to maintain the signs. He cites the admittedly correct principle that generally a party who is himself guilty of a material breach of a contract may not insist upon its performance by the other party.[1] The difficulty with this contention of the defendant is that there is a reasonable basis in the evidence to support the trial court's finding that the plaintiff ". . . properly maintained the signs . . . [and] . . . did not breach the terms of its agreement with the defendant . . . .."

The matter of more serious concern is defendant's argument that he was not in default under the contract because when plaintiff sent him the letter in December of 1973 demanding $691.19, plaintiff should have applied defendant's payment of $103.63, plus the $660 guaranty fund, which would have exceeded the amount he owed.

■ In regard to that contention, these observations support the position of the plaintiff, which was adopted by the trial court. The defendant's performance of the contract had been somewhat erratic. When plaintiff made the demand that payments be brought up to date by paying the $691, the defendant came up with only $103.63; and he made no request that the $660 guaranty fund be applied on the further delinquency. If he had done so, the plaintiff would have had an opportunity to decide whether it would so apply the guaranty fund and continue to extend credit and service to the defendant without the agreed upon standby guaranty. However, the critical aspect of the matter seems to be that even if the defendant had so requested, and the plaintiff had decided to comply with the request, that would have dissipated the guaranty fund, which the contract required the defendant to pledge with the plaintiff as a guaranty of performance of the entire contract. This would have constituted a different breach of the covenants of the contract and would have required the plaintiff to do something it had not agreed to do.

1. 17 Am.Jur.2d Contracts, Sec. 425; *Haymore v. Levinson*, 8 Utah 2d 66, 328 P.2d 307.

In accordance with what has just been said, the trial court was justified in finding that the defendant had breached the contract.

Defendant also argues that the liquidated damages provision of the contract amounted to a penalty because the 75 per cent of remaining rentals bears no reasonable relationship to the damage actually suffered by the plaintiff. It is true that even though a provision for liquidated damages is generally enforceable, the same as the other terms of a contract, if the damages thus stipulated are so excessive that they bear no reasonable relationship to the actual damages suffered, so that it would be unconscionable to give it effect, the court will regard it as a penalty and refuse to enforce it.[2] It is apparent that the trial court had this principle in mind in making this finding, contrary to the contention of the defendant, that:

> . . . the amount stipulated . . . for liquidated damages bears a reasonable relation to the damages actually sustained by plaintiff.

Considering that the evidence shows that the signs involved herein cost over $7,000 to manufacture and install, and that as a result of the defendant's breach of the lease agreement it was necessary to remove them, and that they thus became of very little value, there is ample basis in the evidence to justify the trial court's refusal to find that there was an unconscionable penalty which should not be enforced.

Affirmed. Costs to plaintiff (respondent).

ELLETT, C. J., and WILKINS, MAUGHAN and HALL, JJ., concur.

2. *Jacobson v. Swan*, 3 Utah 2d 59, 278 P.2d 294; *Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446; *Bramwell Inv. Co. v. Uggla*, 81 Utah 85, 16 P.2d 913.